OPINION OF THE COURT
Joan S. Kohout, J.
This private placement adoption action presents a number of intertwined legal issues that highlight the shortcomings of the private placement adoption statutes in New York State. The infant who is the subject of the case has now been in the home of the petitioners since February 21, 1998 without the benefit of a valid adoption consent from the parents or a currently valid preadoption certification order. The adoption agency that originally accepted custody of the child is no longer supervising this placement because it was not licensed in the State where the child was born. Additionally, the fees charged by the principals involved may not be entirely allowable under New York State law.
Unfortunately, there is little statutory or case law guidance available to assist the court in unraveling these dilemmas, and few satisfactory remedies available for the obvious failures of those charged with caring for this child to follow the statutory requirements contained in the Domestic Relations Law. What seems apparent, however, is that along the way many purportedly well-intended people ignored the law, creating a situation that puts this adoption in jeopardy.
*945 After an initial review of the adoption petition and the supplementary documents supplied by petitioners’ counsel with his letter dated August 3, 1999 the court issued a decision identifying legal issues of concern. A copy of the decision was sent to Friends in Adoption, Inc., counsel for the birth mother, counsel for petitioners, both birth parents at the addresses listed in the petition and the Probate Court in Alfred, Maine. Additionally, the court provided all concerned with an opportunity to file additional documentation and affidavits relative to the legal issues raised in the decision, including whether the fees charged are allowable. In response, the court has received and considered the letter of Brendan C. O’Shea, Esq., counsel for Friends in Adoption, Inc., with the affidavit of Mary Walsh Snyder, dated September 8, 1999, the affidavit of Barry J. Bobbins, Esq., dated September 14, 1999, and attached statement of account and correspondences. In rendering this decision the court has also considered the petition and attachments, and letters and attachments filed by petitioners’ counsel dated August 3, 1999 and September 9, 1999. There has been no request by any of the principals involved for a testimonial hearing to further amplify the materials submitted. The court finds that the essential facts are not in dispute and that a hearing would not be likely to present additional information.
Background
This petition was filed in Monroe County Family Court by Louise and Joel M. on June 10, 1999 seeking adoption of a male child born February 19, 1998 in Biddeford, Maine, to Stacey Lee P. Patrick William P. is listed as the child’s father. The petition alleges that the child has been in the care of the petitioners since February 21, 1998.
A review of documents filed supplementing the adoption petition indicates that while petitioners were found to be qualified adoptive parents pursuant to Domestic Relations Law § 115-d by order of Monroe County Surrogate’s Court dated January 13, 1994, at the time this petition was filed in the Family Court on June 10, 1999, the petitioners were no longer certified as qualified adoptive parents. The original certification order was extended by Surrogate’s Court until February 1, 1996 when it lapsed. Apparently, the Surrogate permitted Mr. and Mrs. M. to apply for “recertification” and issued a one-year order on January 5, 1998 that continued until January 5, 1999.
In an effort to determine why this petition was filed some 16 months after placement and after the expiration of order *946 “recertifying” the petitioners as qualified adoptive parents, the court requested additional information from counsel for the petitioners. A Law Guardian was also assigned for the child.
In response to the court’s request for more information, a letter dated August 3, 1999 with attachments was received from petitioners’ attorney. In that letter, counsel argued that' precer-tification was not required at the time of filing the petition for adoption, but only at the time possession of the child occurred. He also explained that a prior adoption proceeding had been filed in Monroe County Surrogate’s Court and that “[blecause of a number of factors, Surrogate’s Court offered to allow the adoptive parents to withdraw their Petition, to be refiled in Family Court. The adoptive parents accepted the invitation, and the Petition was re-filed in Family Court.”[1]
Petitioner’s counsel further outlined a convoluted history involving Friends in Adoption, Inc. adoption agency. An affidavit from Mary Walsh Snyder, caseworker for Friends in Adoption, sworn to on November 19, 1998[2] was attached and stated that originally the birth mother signed documents for an agency adoption, apparently signing custody of the child to the adoption agency for the purpose of an adoptive placement. According to Ms. Snyder, she later learned that Friends in Adoption, Inc. was not licensed in the State of Maine and that the needed clearance pursuant to the interstate compact, therefore, would not occur. (See, Social Services Law § 374-a, art III.)
It appears that the birth mother then agreed to execute a consent for a private placement adoption by the petitioners and that Friends in Adoption, Inc. agreed to give up custody of the child so that this could occur. A consent was signed by Stacey Lee P. on March 6, 1998, a certified copy of which was provided with the petition. Additionally, a document entitled “waiver of notice by putative father or by legal father” was signed by Patrick William P. on February 24, 1998. A noncerti-fied copy of this document was also provided with the petition.
*947 Ultimately, both Maine and New York interstate compact administrators approved the transfer of the child to New York State, effective March 16, 1998.[3] This was close to a month after the child was placed with the petitioners.
Petitioners’ affidavit outlines fees paid to Friends in Adoption, Inc. of $4,500, plus a $500 application fee; $4,189.30 estimated counsel fees for Barry Bobbins, Esq. for representation of the birth mother; and $2,073.16 estimated counsel fees to their attorney Gregory A. Franklin, Esq.
The affidavit of Mary Walsh Snyder dated September 8, 1999 states that the M.s were clients of Friends in Adoption, Inc., an agency licensed in New York State, for four years and that the agency received 66 inquiries on behalf of the M.s. She requests that the court approve agency fees of $4,500 plus the $500 application fee. In her earlier affidavit dated November 19, 1998, Ms. Snyder explained how the adoption was originally an agency adoption, but was redone as a private placement adoption when it was discovered that the agency was not licensed in Maine where the child was born. She further states that Friends in Adoption reimbursed the petitioners for $750 of the fee for Barry Bobbins and $645 for the fee for Gregory Franklin.
Included in the account statement of Barry Bobbins, Esq. were entries regarding the birth father including preparation of waiver, phone and in-person conferences with the birth father totaling 2.6 hours or $351 (2.6 X $135 per hour). Additionally, there were entries clearly related to the original agency adoption consent signed by the mother before it was learned that the adoption agency was not licensed in Maine, telephone conferences prior to the execution of the original consent and the court appearance relating to that consent totaling 2.9 hours or $391.50 (2.9 X $135 per hour). Finally, there are numerous entries clearly related to a second court appearance and the reexecution of the mother’s consents, including conferences with the court and Probate Registrar and City Clerk totaling 4.6 hours or $621 (4.6 X $135 per hour). Interestingly, a $750 “goodwill adjustment” was provided to Friends in Adoption apparently relating to the extensive ser *948 vices provided to the agency.[4] This left a total bill of $4,189.30 payable by petitioners.
Petitioners’ counsel has also submitted his fee documentation. While the fee is higher than need be because the petition was refiled in Family Court, there do not appear to be any questionable entries.[5]
Finally, the financial disclosure affidavit of the petitioners (dated June 1, 1999) lists $175 for “car maintenance for birth mother.”
Lack of certification as qualified adoptive parents
Domestic Relations Law § 115 (1) (b) requires that persons seeking to commence a private placement adoption “shall, prior to the submission of a petition for such adoption and prior to any transfer of physical custody of an adoptive child, be certified as a qualified adoptive parent.” The statute does not provide a penalty for failure to comply with the certification requirements. (See, Matter of Male Infant A., 150 Misc 2d 893, 899 [Fam Ct, NY County 1991].)
Additionally, proposed adoptive parents are required to either file their adoption petition or an application for temporary guardianship within 10 days of accepting physical custody of a child for private placement adoption. (Domestic Relations Law § 115-d.) While there is no specific penalty for failure to comply, clearly the intention is to have prompt court supervision of such placements so that children will not be placed in de facto custody arrangements in homes where they may be unsafe. (See, Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 115, at 184.)
The clear intention of these two provisions is that there be a valid certification in place when the adoption petition is filed and that the petition or request for guardianship be filed within 10 days of placement of the child. The requirements for certification include information that experience shows is likely to change over time, including family circumstances, health, and *949 income, as well as criminal and child abuse registry record checks. (Domestic Relations Law § 115-d.) To permit the filing of an adoption petition after the certification has expired, as is suggested by petitioners’ counsel, would encourage late filings of adoption petitions and placements to continue in homes without the benefit of current investigations showing that they are safe and appropriate.
The dilemma is what if any penalty is appropriate when adoptive parents fail to comply with the certification requirements. The range of responses by courts for violation of adoption laws goes from the extreme measure of dismissal (Matter of Tynetta Q. T., 152 Misc 2d 705 [Sur Ct, Nassau County 1991]; Matter of Jon K., 141 Misc 2d 949 [Fam Ct, Kings County 1988]) to financial sanctions (Matter of Calynn M. G., 137 Misc 2d 1005 [Sur Ct, Nassau County 1987]; Matter of Tersigni [Carballo], 137 Misc 2d 553 [Fam Ct, Schenectady County 1987]) to threats of disciplinary action against attorneys who fail to comply with the certification laws (Matter of Male Infant A., 150 Misc 2d 893, 901 [Fam Ct, NY County 1991], supra).
In this case, the court has assigned a Law Guardian for the child, who has not presented any safety concerns regarding petitioners’ home or circumstances. By all preliminary reports it is in the child’s best interest for this adoption to proceed. With this in mind, the court finds that dismissal would not be appropriate. Counsel for petitioners, however, is warned in the strongest possible terms to comply with all aspects of the adoption and certification laws in the future, or risk a referral to the appropriate attorney disciplinary committee, as well as a financial sanction.
Parents’ consents
Domestic Relations Law § 115-b establishes procedures for judicial and extrajudicial consents from parents in private placement adoptions. Judicial consents taken by a Judge in New York State become irrevocable when executed. (Domestic Relations Law § 115-b [2].) A consent executed before a Judge in another State is permitted if a transcript showing compliance with the statute is also submitted. (Domestic Relations Law § 115-b [2].) All other consents are considered extrajudicial and must comply with the requirements of Domestic Relations Law § 115-b (4).
In this case the birth mother appeared before a Judge in Maine and executed a document entitled “Consent of Petitioning or Non-Petitioning Parent.” The child’s father signed a “Waiver of Notice” before a notary public.
*950 No transcript has been submitted showing that the Maine Judge of Probate complied with the requirements of Domestic Relations Law § 115-b, thus, it may not be considered a judicial consent. The mother’s consent, however, fails to comply with the requirements of Domestic Relations Law § 115-b (4) for extrajudicial consents in several important respects. Most importantly, it fails to advise the mother that she may seek to revoke the consent within 45 days or notify her of the court where the adoption will be filed. (Domestic Relations Law § 115-b [4] [a] [i], [ii].)
Similarly, the document executed by the father fails to comply with the Domestic Relations Law and is not sufficient to qualify as an extrajudicial consent under Domestic Relations Law § 115-b (4). Nor is it sufficient to waive his right to notice as the father of an out-of-wedlock child under Domestic Relations Law § 111-a (5), which requires the waiver to be acknowledged in the same manner as a surrender executed under Social Services Law § 384. Social Services Law § 384 (3) requires that any instrument signed pursuant to the section be executed before a Judge, or before one or more witnesses before a notary public or “other officer authorized to take proof of deeds.” Mr. P.’s waiver was not taken before a witness, although his signature was notarized.
As a result, this child is presently in the petitioners’ care without any valid consents or waivers from the parents. Since counsel for petitioners has recently written the court by letter dated November 19, 1999 that efforts are being made through Friends in Adoption to locate the birth parents, this case will be scheduled for a court appearance 30 days from the date of this decision to address this issue and to schedule an expedited hearing if needed.
Fees
New York State law narrowly defines the circumstances when a fee may be charged for the placing out of a child for adoption. (Social Services Law § 374; see also, Matter of Stephen, 168 Misc 2d 943 [Fam Ct, Monroe County 1996].) A violation of these requirements is a criminal offense. (Social Services Law § 389 [2].)
Only authorized adoption agencies may charge a fee “for the reasonable and necessary expenses” of an adoptive placement. All other agencies or persons are prohibited from requesting or accepting a fee for assisting a birth parent to place a child for adoption. (Social Services Law § 374 [6].) Adoptive parents are *951 permitted to pay for reasonable medical expenses connected with the birth or “other necessary expenses incurred by the mother in connection with or as a result of her pregnancy or the birth of the child” (Social Services Law § 374 [6]). They may also pay for the reasonable legal expenses of the birth parent relating to the adoption (Social Services Law § 374 [6]), as well as the reasonable and actual legal fees charged by their own attorney for legal services rendered in connection with the adoption. (Matter of Male Infant B., 96 AD2d 1055 [2d Dept 1983].)
The fees charged by Friends in Adoption totaling $5,000 include inquiries made by birth parents about adoption. According to the August 9, 1999 affidavit of Mary Walsh Snyder, 66 inquiries were received in response to Yellow Pages, Internet, milk carton ad, newspaper and other sources. The fees apparently cover services to birth parents with no connection to this adoption. Ms. Snyder stated “FIA continued to work with all the birth mothers until such time as they chose to disengage from the agency and/or to pursue other alternatives.”
Friends in Adoption does not bill adoptive parents on an hourly rate. In this adoption, the court will not allow fees relating to the original plan of agency adoption, because that plan required modification because of the error of the agency. Indeed, had this been an agency adoption the $5,000 fee would have been reasonable, since the agency would be charged with supervisory responsibilities. However, here Friends in Adoption signed over its legal rights to custody of the baby to the petitioners for the purpose of a private placement adoption. Thus, the only allowable services provided were matching services, support for the birth mother and consultation to the adoptive parents. Additionally, the court notes that to the extent that Friends in Adoption uses fees received from one adoptive couple to pay for services to other individuals, the fees are not allowable in New York State. The only fees allowable are those charged for services provided to the adopting parent or to the birth parent directly relating to the adoption or birth of the child. (Social Services Law § 374 [6].) Under the circumstances here the court reduces the fee to $3,000 plus $500 for the agency registration. The remaining amount of $1,500 is to be refunded to the petitioners.
Family Court is obligated to review the reasonableness of legal fees charged as part of an adoption. (Matter of Male Infant B., supra; Matter of Baby Girl, 189 AD2d 763 [2d Dept 1993].) Under the facts presented here, the court finds that Barry *952 Bobbins, Esq. charged petitioners for services provided not to the birth mother who he represented but to the birth father who was not his client. It was not his responsibility to prepare the waiver for the father or meet with him. Thus, the $351 relating to these services is disallowed. Additionally, the waiver signed is not in compliance with New York law.
Additionally, Mr. Bobbins charged for a total of $1,012.50 for services relating to court appearances and the mother’s consents. As explained earlier in this decision, the consent of the mother fails to satisfy New York law. It is unreasonable and inappropriate for petitioners to pay for the cost of consents that are ineffective. Consequently, the court directs that Barry Bobbins, Esq. reimburse the petitioners $1,363.50. The remainder of Mr. Bobbins’ fee is approved.
Car maintenance expense of birth mother
Finally, the petitioners list $175 paid to the birth mother for “car maintenance for birth mother.” Social Services Law § 374 (6) permits the payments to the birth mother of necessary expenses incurred “in connection with or as a result of her pregnancy or the birth of the child.” No other expenses are allowable in New York State. (See, Matter of Stephen, 168 Misc 2d 943 [Fam Ct, Monroe County 1996], supra.) In Matter of Alyssa L. B. (131 Misc 2d 755, 756 [Sur Ct, Nassau County 1986]) the court disallowed reimbursement for an automobile down payment noting that the statute does not permit reimbursement for “each and every conceivable expense” incurred during the pregnancy.
Since it has not been demonstrated that the car maintenance expense related to the pregnancy, this expense is disallowed and must be refunded to petitioners.
Conclusion
In summary, the court finds that the petitioners should have been certified as qualified adoptive parents when this petition was filed in Family Court, but imposes no penalty. Counsel is advised that future failures to comply with adoption procedure law may result in financial sanctions and/or a referral for disciplinary action.
The court rules that the consent signed by the birth mother and the waiver signed by the father fail to comply with New York State law and schedules this case for 30 days from this decision to determine whether an expedited hearing is required.
*953 The court disallows $1,500 of the fee charged to petitioners by Friends in Adoption and $1,363.50 charged by Barry Hob-bins, Esq. The fees charged by Gregory A. Franklin, Esq. are approved.
The car maintenance expense of $175 paid by petitioners to the mother is disallowed and must be refunded by the mother to the petitioners.

. In reality it appears that the Surrogate questioned the fees that were charged in this case, especially the fees charged by the attorneys. This is documented by the affidavit of Mary Walsh Snyder dated November 19, 1998 which states that it is made in support of the fees charged by the birth mother’s attorney. The date of this affidavit is eight months before the petition was filed in Family Court and it is, therefore, reasonable to infer that it was prepared for submission to the Surrogate.

. . Ms. Snyder’s affidavit was prepared while the petition was pending in Surrogate’s Court. Apparently the Surrogate raised questions about the fees charged to petitioners and Ms. Snyder’s affidavit was offered in support of the counsel fees charged by the birth mother’s attorney.

. Official written approval was not provided by New York State until April 7, 1998, although the form from Maine interstate compact administrator shows that verbal approval was received on March 16, 1998 which was the date Maine signed off.

. It is unclear whether this $750 adjustment was in addition to the $750 that Friends in Adoption states it reimbursed the petitioners for Mr. Bobbins’ fee.

. Although the court questions the decision of petitioners’ counsel to refile this proceeding in Family Court in order to protect the counsel fees of the birth mother’s attorney, there is no basis to infer that the decision was made without the approval of the petitioners. In hindsight, the decision was clearly ill-advised, since it has caused a substantial delay and has raised several legal issues that complicate this adoption case.